BERKOWITZ ENVELOPE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25356.   Promulgated December 15, 1930.

*Henry W. Fox, Esq.*, for the petitioner.
*L. A. Luce, Esq.*, for the respondent.

## OPINION.

LANSDON: The issue here is one of fact. To establish that fact the burden is on the petitioner to show that the transactions between it and its related corporations resulted in loss to it in the taxable year.

The record is not clear respecting consideration which actually passed between the corporations in the several transactions involved. If we are to accept the figures in the petitioner's ledger sheets as conclusive proof of the actual price it paid and received for the stock when bought and sold, their difference in amounts would indicate the loss claimed; but, since these are mere accounting entries by the petitioner in its own books, they become proof of such loss for tax purposes only upon evidence sufficient to establish the facts which they purport to record. *Douglas* v. *Edwards*, 298 Fed. 229; *Krieg Tanning Co.*, 4 B. T. A. 1081; *Corn Exchange Bank*, 6 B. T. A. 158. Respecting the price petitioner paid for the stock, the testimony is that the credits given the two stockholders on account of the sale were at some time or other drawn out by them in cash; however, the record is entirely lacking in positive proof to show just how, if at all, the Paper Co. liquidated its account, or that any money ever passed between it and the petitioner in any of their numerous transactions. Much energy was expended by counsel for the respondent at the hearing to elicit from petitioner's officials definite informa-

tion touching the question of actual cash payments made in settlements between these companies. In such connection we quote some of the questions which were put by respondent's counsel to petitioner's auditor, Hartung, and the latter's answers, which are typical:

Q. And now, in this transaction, whereby this alleged sale was made from the petitioner to the Baltimore Paper Company, was that done in the form of entries or credits on the books, or was there actual cash paid?

A. At the time in form of credits, as were all transactions with the Baltimore Paper Company, both debits and credits, and the cash transactions afterwards as the occasion arose, but they were all liquidated sooner or later.

Q. Do you know of any cash being paid at the time the alleged sale was made?

A. Not in that exact amount, because there were other credits, because of the purchase by the Berkowitz Envelope Company of Delaware from the Baltimore Paper Company of machinery items that amounted to quite a large sum.

Later, this witness, when asked the direct question whether or not the Paper Co. gave to the petitioner anything to evidence the sale of the stock to it, answered by saying:

The Baltimore Paper Company, at the time checked their entries and 'they effected a reconcilement with the accounts of the Berkowitz Envelope Company, and thereby satisfied each other that they were correct.

Obviously, the intent of these answers, as given, was to imply that actual debts then owing by the petitioner to the Paper Co. for machinery already purchased were paid by the transfer of this stock, and that a balance over in actual cash was paid to petitioner. This implication, however, runs counter to the recitals of the minutes of the meeting of petitioner's directors which authorized the sale of the stock. According to these minutes, petitioner's president informed the board that an offer to buy this stock at $33,740.73 had been made by the Paper Co., which offer he recommended they accept because they were contemplating the purchase of several rotary folding machines and that the credit thus established with the Paper Co. would enable them to make such purchases. From this recital, it would seem that the purpose of the sale of this stock was to establish credit for future use, and not to pay a preexisting debt. Other evidence shows a commingling of the affairs of the petitioner and its related companies to an extent that it is impossible to determine which, in a given transaction, is the responsible party or the major beneficiary. The petitioner's ledger sheets, in evidence, indicate that it supplied funds for miscellaneous investments in machinery, stocks, and bonds, which were charged against the Baltimore Paper Co. account. It also paid notes and interest on loans at various banks for which payments it likewise charged that company's account. From time to time offsetting credits were entered in the Paper Co. account indicating a sale of machinery or other assets to petitioner. It is in these books that it entered the charge against

the Paper Co. for $33,740.73, on account of the sale of the Redheffer stock to it on April 2, 1923. There is no evidence that any separate books or records were kept by or for the Paper Co., or that any business was transacted by it, or in its behalf, except as shown in these ledgers, and we are of the opinion that it had no such other business. In fact, the scope and nature of the business shown to have been carried on in that company's name and financed by the petitioner, when considered in connection with other facts, is convincing to us that, although a separate corporate entity, the Baltimore Paper Co. was employed solely by its managers as a vehicle through which to clear advantageous investments and transactions in which the petitioner was a major beneficiary. Hartung says that these debits and credits were all liquidated "sooner or later" by the companies checking "their own entries" and satisfying each other "that they were correct." This assurance of a satisfactory settlement between the corporations falls far short of convincing us, in so far as ultimate benefits were concerned, that the interests of petitioner and the Paper Co. were not one and the same.

If the apparent identity of interest, as just noted, did not make the question of petitioner's loss doubtful, a further circumstance connected with the disposition of certain assets of the reorganized Redheffer Co. might be urged in support of similar conclusions. The record shows that when the petitioner took over the Redheffer capital stock from the Berkowitz brothers on January 2, 1923, a stock of paper, gum, and other items, which witness Hartung says "figured as part of the consideration," was inventoried to it. The Redheffer Co. was then reorganized and moved to St. Louis; and there is nothing in the record to show that anything other than the bare stock of that company figured in the sale from petitioner to the Paper Co. What became of the merchandise inventory of the Redheffer Co. after its purchase, reorganization, and removal to St. Louis we think is highly important. Under normal circumstances we might assume that it remained in the possession of the reorganized company and formed a part of its capital assets when its stock passed to the Paper Co.; but, in view of the fact that the inventory included paper, gum, and other material suitable to petitioner's current use and requirements, and that the petitioner closed out that company and moved it to St. Louis, where it remained inactive for a time, there is, to say the least, equally as strong a presumption that the petitioner took over such assets and consumed them in its business at Kansas City. In view of these facts, as indicated, we must hold that petitioner has failed to sustain the burden of showing that it sustained the loss contended for, and the determination of the respondent is approved.

*Decision will be entered for the respondent.*